■ In the Matter of ROBERT ABRAMS, as President of the Borough of The Bronx, Appellant, v. WILLIAM J. RONAN et al., as Directors of the Metropolitan Transportation Authority, et al., Respondents.— Judgment, Supreme Court,

Bronx County, entered October 9, 1973, dismissing the petition herein, affirmed, without costs and without disbursements. The petitioner, in his official capacity as President of the Borough of the Bronx, instituted this proceeding under CPLR article 78 for a judgment, in the nature of a writ of mandamus, ordering the respondent directors of the three named public authorities, charged with the operation of the New York City surface transit facilities, to restore free transfer points on the bus lines of Bronx County at all points where such transfers were available prior to January 5, 1962, when the bus lines were operated under private ownership. The petition is founded on the claim that residents of the Bronx are denied the right of equal protection of the laws accorded by the State and Federal Constitutions in that free transfer points are maintained on other municipal bus routes operating in Brooklyn, Queens and Staten Island. On January 5, 1962 when the bus lines serving the Bronx were privately operated, all free transfer points on such lines were eliminated by resolution of the Board of Estimate which was charged with fixing the rates for these transit facilities. This step was taken to ease the financial difficulties of the private operators. In March of 1962 the City of New York was authorized to condemn these transit facilities and to lease the operating property to Manhattan and Bronx Surface Transit Operating [MABSTOA], a public benefit corporation created by chapter 163 of the Laws of 1962. Thereafter, and on March 20, 1962, MABSTOA took over the operation of the bus lines here in question and has continued to operate them on a fare structure which made no provision for free transfer points. The gravamen of the petition is that the transit facilities of MABSTOA are presently being operated at a profit and the financial condition that warranted the original elimination of free transfer points no longer exists. Although such circumstances may well be relevant in a proceeding designed to review the rate structure of a public facility, they are not pertinent to the resolution of a claim founded on the constitutional right to equal protection of the laws. This raises only the narrow and limited question of reasonable classification. Here MABSTOA treated all passengers utilizing its transit facilities alike and it cannot be said that such a classification is unjustified by any state of facts which could reasonably be conceived by the rate-making body. Accordingly, the constitutional challenge under the equal protection clause must fall. (*Matter of 436 W. 34th St. Corp.* v. *McGoldrick,* 288 N. Y. 346; *Matter of Dorn "HH"* v. *Lawrence "II",* 31 N Y 2d 154; *McGinnis* v. *Ogilvie,* 394 U. S. 322.) In the light of these principles, no purpose would be served by remanding the proceeding for a hearing. Concur — Markewich, J. P., Tilzer and Moore, JJ.; Kupferman, J., dissents in the following memorandum: The Borough President of The Bronx brings this article 78 proceeding in the nature of mandamus to require the Manhattan and Bronx Surface Transit Operating Authority (MABSTOA) to establish a system of free transfers in The Bronx at points where free transfers existed prior to January 5, 1962 when the bus system was privately operated. Joined as respondents are the present organizations involved in transportation in the city, including the Metropolitan Transportation Authority (MTA) and New York City Transit Authority. His petition was dismissed. At the outset, we are met by the contention that the Borough President's staff counsel who represents him on this appeal, may not pursue this matter in view of subdivision a of section 394 of the New York City Charter, which provides that the Corporation Counsel shall "have charge and conduct of all the law business of the city and its agencies and in which the city is interested." We are all agreed that when the Borough President acts *pro bono publico* and not in the name of the city, as here, this is not a bar. (Cf. *Matter of Kay* v. *Board of Higher Educ.,* 260 App.

Div. 9, mot. for lv. to app. den. 285 N. Y. 859.) It is next contended that the Borough President has no standing. However, he proceeds also as a resident of the Bronx, and in any event, as any such resident, it may be presumed that he uses public transportation, and certainly if he uses the bus line, there is standing. (Cf. *United States* v. *SCRAP*, 412 U. S. 669; and *Matter of Posner* v. *Rockefeller*, 26 N Y 2d 970.) The ramifications with respect to the prior system of transfers in the Bronx and the interlocking relationship between the various public transportation groups and the claim of discriminatory treatment, are matters to be developed at a hearing, but the petition should not have been dismissed.