OPINION OF THE COURT
WlLMER J. PATLOW, J.
This is an article 78 proceeding in which petitioners Richard A. and Sherry Knight and others seek to prevent respondents New York State Department of Environmental Conservation (DEC) and its commissioner from implementing a massive State-wide acquisition program of freshwater wetlands and adjacent upland areas.
Respondents move pursuant to CPLR 506 (subd [b]), 510 (subd 1) and 511 to change venue from Monroe County to Albany County on the grounds that Monroe County is an improper county and Albany County is proper since it is where the determinations complained of were made, where the material events took place and where respondents’ principal office is located.
*197 Petitioners assert that although Albany County may be proper, Monroe County is not an improper county for purposes of venue as it is within the judicial district where the material events took place and where some of the determinations complained of were made.
This decision is limited, accordingly, solely to the question of venue.
Petitioners’ amended petition states that Richard and Sherry Knight are farmers who own or lease approximately 2,000 acres of land in the vicinity of Honeoye, New York, within the Town of Richmond and the County of Ontario. About 450 acres are located in the Honeoye Creek Wetlands Project which is scheduled for acquisition by the respondent Department of Environmental Conservation. About 236 of the 450 acres are cultivated lands which also fall within an agricultural district as defined by the New York Agriculture and Markets Law.
Petitioners, which include the Ontario County Farm Bureau, Inc., the New York Farm Bureau, Inc., the Town of Richmond and the Honeoye Chamber of Commerce, allege that the entire Honeoye Creek Wetlands Project area as well as other areas targeted for acquisition contain prime agricultural lands. Petitioners contend that implementation of the State-wide program threatens the livelihood of farmers such as the Knights and other members of the farm bureau organizations, and further threatens the tax base, businesses, local land use plans, community character and economic base of communities and local governments such as the Town of Richmond and the Village of Honeoye.
Petitioners allege that the implementation and proposed implementation of the State-wide acquisition program violate numerous statutes and regulations, including the Agriculture and Markets Law, the Environmental Quality Bond Act of 1972, the Environmental Quality Review Act, the Administrative Procedure Act and regulations promulgated thereunder. More specifically, petitioners object to respondents’ priority rating system which identified the Knights’ land as high priority for acquisition, respondents’ programmatic environmental impact statement which as *198 sessed environmental impact in generic rather than site-specific terms, respondents’ failure to hold required hearings, and respondent commissioner’s failure to promulgate appropriate regulations and issue certain declaratory rulings.
In answer to the amended petition respondents allege, inter alia, that petitioners lack standing; that the State Administrative Procedure Act was enacted subsequent to the development of the priority rating system and is therefore inapplicable to it; that portions of the petition are time barred; that that part of the petition which is directed towards the programmatic environmental impact statement is moot inasmuch as respondents are currently in the process of preparing a site-specific statement for the Honeoye Creek Wetlands Project; that petitioners have failed to exhaust their administrative remedies; and that respondents have made no determinations which are in violation of lawful procedure, affected by errors of law, arbitrary, capricious or an abuse of discretion.
Attached to respondents’ answer is an affidavit of Edward D. Holmes whose current position is as acting regional supervisor of natural resources of the DEC’s Region 8. The Region 8 office is located in Avon, New York, in Livingston County. Region 8 covers almost the same geographic area as the Seventh Judicial District. Both Ontario and Livingston Counties fall within the DEC’s Region 8 as well as within the Seventh Judicial District.
Mr. Holmes states in his affidavit that the Region 8 wetlands acquisition program is implemented by employees in Real Property Services and the Bureau of Wildlife who are under his supervision. These employees are involved in identifying areas for potential acquisition, rating areas under DEC’s priority rating system, conducting environmental reviews of potential sites and holding discussions and negotiations with owners of land within areas selected for acquisition.
In particular, Mr. Holmes states that according to documents in the files of the Region 8 office, the Honeoye Creek Wetlands has been an active acquisition project since at least 1973, and the DEC has been conducting an environ *199 mental review of the proposed project since 1977. Mr. Holmes further states that a wildlife biologist in the Region 8 office made the initial recommendation to prepare an environmental impact statement for the Honeoye Creek Wetlands Project. His recommendation was thereafter approved by Mr. Holmes as regional program supervisor, by the regional supervisor of environmental analysis and by the regional director. It was the Avon office which issued a “Notice of Intention to Prepare a Draft Environmental Impact Statement” and “Determination of Significance” which was filed with DEC’s Albany and Region 8 offices, the Supervisor of the Town of Richmond and the Ontario County Planning Department.
The Holmes affidavit further states that early in 1980 the DEC submitted a formal proposal to the United States Fish and Wildlife Service for Federal funding of the Honeoye Creek Wetlands Project and two other wetlands acquisition projects within Region 8. The DEC and the United States Fish and Wildlife Service as colead agencies thereafter determined that a site-specific environmental impact statement should be prepared for the Honeoye Creek Wetlands Project. Employees of Region 8 are currently preparing such a statement. In conjunction with the preparation of this environmental impact statement a scoping meeting was held in Avon, New York, on August 12, 1980 for the purpose of answering questions and receiving comments regarding the project in question. Mr. Holmes asserts that it is the DEC’s intention to complete the environmental review of the Honeoye Creek Wetlands Project in an orderly and deliberate manner, and that the remaining steps include the preparation, filing and circulation of the draft site-specific environmental impact statement, providing for a period of public comment and a public hearing, and the preparation of the final impact statement.
All of the above activities have occurred or presumably will occur in and around Livingston and Ontario Counties.
The court also notes, however, the affidavit of Eric Fried, currently employed as head of the Fish and Wildlife Planning and Extension Office in Albany, New York, which makes it clear that the priority rating system to which petitioners object was itself developed in Albany.
*200 The court further notes that the draft programmatic environmental impact statement and the final programmatic impact statement were both prepared in Albany, New York, under the auspices of the DEC’s Division of Fish and Wildlife. These programmatic environmental impact statements cover 39 potential acquisition projects in 25 different counties.
Finally, the court notes the affidavit of Henry F. Gannon, superintendent of the DEC’s Bureau of Real Property Services in Albany, wherein he states that final approval of a particular real estate acquisition is made in Albany. Twenty-three sites which were included in the programmatic environmental impact statement and are located in 16 counties have already been acquired by the State.
At the threshold, respondents stress that the court must limit its examination to that which is contained within the four corners of the amended petition. However, the cases cited by respondents for this proposition were decided under section 1287 of the Civil Practice Act, the predecessor statute to CPLR 506 (subd [b]). Section 1287 of the Civil Practice Act provided that venue is proper within the judicial district embracing the county “wherein it is alleged in the petition that the material facts otherwise took place”. Significantly, CPLR 506 (subd [b]), in contrast, refers merely to the county “where the material events otherwise took place”. Thus, the court concludes it may consider not only the face of the amended petition but also the affidavits submitted to the court on this motion.
Turning now to the merits, CPLR 506 (subd [b]) sets forth the applicable venue provisions as follows: “(b) Proceeding against body or officer. A proceeding against a body or officer shall be commenced in any county within the judicial district where the respondent made the determination complained of or refused to perform the duty specifically enjoined upon him by law, or where the proceedings were brought or taken in the course of which the matter sought to be restrained originated, or where the material events otherwise took place, or where the principal office of the respondent is located” (emphasis supplied).
Respondents argue in support of their motion that inasmuch as the petitioners seek relief against implementation *201 of the entire State-wide acquisition program, the events which are material to this article 78 proceeding occurred in Albany where the respondents developed and administered the program. Respondents point out that the priority rating system was developed in Albany, the programmatic environmental impact statement is State-wide in nature, the regulations sought by petitioners would be promulgated in Albany, and requests for declaratory rulings must also be made in Albany.
Petitioners counter that the factors cited by respondents are not “material events” but rather “determinations” within the meaning of CPLR 506 (subd [b]). Petitioners contend that some of the determinations took place in the Seventh Judicial District: for instance, the selection of Honeoye Creek Wetlands to be rated under the priority rating system as well as the evaluation and rating itself, which involved inspecting and mapping the property, conducting a scoping meeting prior to the development of the draft programmatic environmental impact statement and attending various meetings between attorneys for petitioners and representatives of respondents.
Petitioners further contend that “material events” occurred in Ontario County because that is where the Knight property is located and the acquisition would occur, where the Knights reside, where all the petitioners except the New York Farm Bureau, Inc. are exclusively active, and where the petitioners protested the DEC’s activities. Petitioners state that the petition does specifically challenge the proposed Honeoye Creek Wetlands acquisition, that their standing to challenge the State-wide program rests upon their connection to the Honeoye Creek Wetlands, and that they may have no other vehicle for properly protecting their local interests other than this article 78 proceeding.
Respondents reply that the mere situs of the property does not constitute a “material event”. Furthermore, respondents assert that “where the material events otherwise took place” refers to the location where material acts were previously performed and not to the place where the determination complained of is expected to have an impact in the future.
*202 We now turn to a review of those cases which have dealt with the issue of whether or not property situs constitutes a “material event” for venue purposes.
On the one hand Cohen v Department of Social Servs. of State of N.Y. (30 NY2d 571, affg 37 AD2d 626) and Semple v Miller (67 Misc 2d 545, 547, affd on other grounds 38 AD2d 174), involved, respectively, a planned phaseout of a State facility for juvenile delinquents and the closing of a State school for the mentally retarded. Both courts held that venue was properly laid in Albany County where the determinations were made and not in the county where the facility or school was located. Similarly, in Matter of Franklin Nat. Bank v Superintendent of Banks of State of N.Y. (40 Misc 2d 315) the court held that venue was properly laid in New York County where the respondent’s determination to permit the establishment of a branch office of petitioner’s rival bank was made, and not in Nassau County where petitioner’s principal and branch offices were located and where the rival branch office would be established.
On the other hand, in Matter of Lefkowitz v Beame (52 AD2d 925), an article 78 proceeding brought to compel specific performance of a contract involving real property, the court held venue was proper in Richmond County since that was where the real property was located, where the order for its sale had been made, and where a significant corporation had its principal place of business. Likewise, in Matter of Lacqua v O’Connell (280 App Div 31), an article 78 proceeding brought to review a determination of the State Liquor Authority, the court held venue was properly laid in the judicial district embracing the county where the premises involved were located.
While it can readily be seen from these cases that situs may or may not be considered a “material event” for venue purposes under CPLR 506 (subd [b]), it does not follow that this court must ignore situs as a factor in determining venue.
Of particular significance is the case of Zorach v Clauson (86 NYS2d 17, affd 275 App Div 774, affd 300 NY 613), an article 78 proceeding against the Commissioner of Educa *203 tion and the Board of Education of the City of New York wherein the court held that venue was properly laid in Kings County where the board of education, acting in accordance with regulations promulgated by the Commissioner of Education in Albany, had devised certain rules and regulations for a “released time” program in the schools. Venue was held to be proper in Kings County rather than Albany County notwithstanding the fact that petitioners had made their demand for discontinuance of the local school program in Albany and had there been refused.
The respondents in Zorach put forth much the same arguments as respondents in the case at bar. In Zorach, respondents argued that the regulations of the Board of Education of the City of New York were subordinate to the paramount regulations of the Commissioner of Education, that the proceedings in the main were directed to the Commissioner of Education’s power to promulgate the paramount regulations; and that the “material facts” provision of section 1287 of the Civil Practice Act (predecessor to CPLR 506, subd [b]) applied solely to the situs of the demand for discontinuance and the commissioner’s refusal.
The court concluded that the commissioner’s determination was clearly distinguishable from the “material facts” of the case, which it defined as the “underlying events * * * which gave rise to the official action complained of” (Zorach v Clauson, 86 NYS2d 17, 20, supra; emphasis supplied). The court found the essential “material facts” to-be the actual practice and program of released time as it existed and was in operation at the schools attended by petitioners’ children.
The court in Zorach further found that the petition there was directed in part towards the power of the local board of education to promulgate its own procedures and to sponsor and effectuate the local program.
The court specifically rejected, a contention that the statute expressed a public policy of protecting State officials from having to justify their actions outside the Third Judicial District. Then, as now in CPLR 506 (subd [b], par 2), the Legislature made an exception for any named *204 agency by providing that a proceeding against such agency would have to be brought in Albany County. This court notes that so long as the Legislature has not included the Department of Environmental Conservation in the CPLR 506 (subd [b], par 2) listing, respondent is subject to the more general provisions of CPLR 506 (subd [b]) which give petitioners a clear choice of alternatives.
In the case at bar, following the reasoning of Zorach v Clauson (supra), this court rejects respondents’ argument that the “material events” within the meaning of CPLR 506 (subd [b]) are the development and administration of the wetlands acquisitions program in Albany. To do otherwise would be to define “material events” as if they were the same as respondents’ “determinations” and thus to deprive petitioners of the alternative basis for venue which the Legislature clearly intended to provide.
Furthermore, a reading of CPLR 506 (subd [b]), set forth above, reveals not only that there are alternative places where this proceeding may be brought, which of course means that there can be more than one proper county for venue purposes; but also that there is no requirement that all the determinations complained of, or that all the material events, must take place within the same county or judicial district in order to be properly venued therein.
The court concludes that Monroe County, which is within the Seventh Judicial District, is a proper county, although not the only proper county, for purposes of venue inasmuch as material events and some of the determinations complained of occurred within Ontario and Livingston Counties, also within the Seventh Judicial District.
In support of the court’s conclusion, the following factors have been considered. .The Honeoye Creek Wetlands Project is located within Ontario County and the Knights live and carry out their farming activities in that county. The Ontario County Farm Bureau, Inc., the Honeoye Chamber of Commerce and the New York Farm Bureau, Inc. are all active within Ontario County. The Region 8 office of the DEC in Avon, New York, made the initial identification of the Honeoye Creek Wetlands Project as an area for potential acquisition and recommended that an environmental *205 impact statement be prepared. In addition, it was the Region 8 office which conducted the evaluation and rating which targeted the Honeoye Creek Wetlands Project as a high priority for acquisition under the priority rating system. In conjunction with such evaluation and rating the Region 8 officials inspected and mapped the Knights’ property in Ontario County. Furthermore, the DEC Region 8 office is currently preparing a site-specific environmental impact statement and in connection therewith had conducted one, and will conduct another scoping meeting in Avon, New York. Finally, the Region 8 officials have held numerous meetings in Livingston County with petitioners’ representatives for purposes of discussion and negotiation.
Therefore, respondents’ motion to change venue from Monroe County to Albany County on the grounds that Monroe County is an improper county is hereby denied.